Our third case this morning is number 1600-1800, ProBatter Sports, LLC v. Sports Tutor, Inc. Mr. Hartz. Thank you, Your Honor, and may it please the Court. This case is about whether it's obvious to use dynamic braking in a programmable pitching machine where that machine needs to deliver pitches of different speeds in just a very short time, a few seconds in between each pitch. I'd like to start by talking about why dynamic braking is the obvious choice here and then go back to discuss some of the problems in the District Court's findings on the individual gram factors. If you start from the Pryor-Floyd patent, it says you can change any one or more of the variables between each and every pitch rapidly in a period of time of a few seconds. Did you specifically point this out to the Court below, this particular reference and the particular teaching that it has? Yes. The Floyd patent is cited in the post-trial brief, and there's a claim-by-claim presentation. Was it cited in the post-trial brief? Was it cited in the judge before then? Before then? Yes. It was introduced at trial and discussed with one of the witnesses. Yes. And so if you start from the Floyd patent, it says you can do this in just a few seconds. I'd like to point out that in the entire record of what's happened in this case, the original prosecution, a decade in the court, and then patent office reexaminations, there's no practical alternative to dynamic braking that's been suggested that could achieve this. And so if you can... And to that end, I'd like to point out page 57 of Probatter's brief. Not our brief, but Probatter's brief. They rely on the fact that Sports Tutor has to use dynamic braking in order to operate the accused infringing home plate machine. So if that's true of Sports Tutor's machine today, the only way to do it this quickly is with dynamic braking. That's also how it would have been done in the prior art, to achieve this short time interval between pitches. And so not only is it... Not only is that the only practical way, there's also evidence in the record from a motor control vendor, a motor control vendor catalog that says any braking or reversing that's more frequent than twice per minute, you should use dynamic braking. And all of that predates the patents in suit and when these claims were filed. So once you have those two pieces of information, the Floyd patent and another patent, Sanders patent, they have these short time intervals. If you go to a motor control vendor and say, hey, I want to do this, I need to change these speeds very quickly, the motor control vendor, the logical thing that they would recommend is dynamic braking. It says that directly in this catalog that we have. Not only is that what a motor control vendor hypothetically would have done, that's in fact what was done. There's evidence that these drives were shipped to a baseball pitching machine manufacturer and that this sort of circuit was used in a tennis machine. Is this some of the evidence that was presented to the court through expert testimony and other fact witnesses? There was no expert testimony in this case, Your Honor. But it was all fact witnesses on the people who developed this tennis machine in the late 70s and sold it throughout then and then. A lot of testimony about the prior machines and how they functioned and whether they did or did not involve dynamic braking, but the judge seemed unimpressed with the people that were supplying that information. In fact, she expressly rejected from essentially credibility grounds an awful lot of their testimony. I understand that and a lot of that testimony that she's rejected is not what we're relying on to make our case today. We're saying if you start from the printed record from Floyd, from these final office actions that the patent examiners made in the re-examinations, they set out where all these teachings are in the prior art. This is my concern. My concern is this, is that we're reviewing the district court's decision based on the evidence that she heard. And she made a number of credibility determinations about the witnesses that were presenting that evidence that you're relying on. And so it feels as if you're telling us we should just ignore that and just go right to the printed documents. I'm not telling you to ignore her credibility determinations. There is no credibility determination with regard to the prior art patents and what happened during the re-examination. The prior art patent teaches everything but dynamic breaking. Yes. That's our position and there was a pretrial stipulation that we thought that they had agreed to that and that's all we were going to try. What I'm trying to get at is it looked to me like substantially all of your dynamic breaking evidence was being presented through the testimony of individuals whom she rejected as trustworthy. So I'm then saying, well, where is dynamic breaking in the prior art someplace else? And once, even if I found the prior art to show dynamic breaking, where is the evidence of a motivation to comply? Okay, where is it found in the prior art is the first question? Yeah, I mean, for other than through the witnesses that were rejected. Well, the witnesses weren't rejected completely. She did find that everyone working in this field would work with a motor control vendor in designing a pitching machine. And we had a motor control vendor at trial. And we know from the prior art that there are all kinds of motor controls. There's dynamic breaking but there are other forms of motor controls that have been used in the past, right? Not that could achieve this rapid change in pitches, rapid change in speeds. I understand that. And so what we're looking for is something in the record that's unimpeached that deals with a dynamic breaking. What you're saying, as I understand it, is you've given up on the notion that we should pay attention to these witnesses who said that the prior art used dynamic breaking specifically, but you're saying that the prior art showed a short interval between pitches and that necessarily involved dynamic breaking. And if one wanted to achieve that, one wouldn't necessarily have to use dynamic breaking. The end of your statement is correct. We think that the findings regarding what the witnesses said, we think those are wrong, but you don't need to get to that to reverse here. Starting from the prior art patents that you have, that you can change these speeds this quickly, and the district court's finding that a person of skill would work with a motor control vendor. The evidence from the motor control vendor says, yes, you would use regenerative or dynamic breaking for this application. The catalog says that they always recommend dynamic breaking if it's more than twice per minute. So every few seconds, every 10 seconds, all of that is more than twice per minute. And it's just exactly what they would recommend. Does that answer your question? Yes. Okay. I'd like to jump back to the record from the reexaminations, the final office actions. These were exhibits that were admitted without objection at trial as a full exhibit for all purposes. These provide an element-by-element, claim-by-claim matching up of the prior art patents, including the Floyd patent, including the Sanders patent, with each of the asserted claims. Apart from dynamic breaking. Correct. That is the one aspect that was challenged on the appeal in the patent office and that the Board of Appeals said, no, we don't see those in the references explicitly. So all of the other features, the structural features about how the machine head pivots and you can program it to deliver the different pitches, all of those features are found in the prior art patents. That's found in this patent itself, too, right? The description of the prior art. Yes, to some extent. That's right, Your Honor. Maybe not every single limitation, but not every single limitation might be in the background. But certainly in the prior art that was cited in the prosecution and in the reexaminations, the Floyd patent, for example, all of the elements are there other than dynamic breaking. So if you start from that and the only missing piece is dynamic breaking and the prior art says you change these speeds in just a few seconds and the person of skill has access or works with a motor control vendor, there's the motivation. You need to do it in a few seconds. The motor control vendor will recommend dynamic breaking as the method to you that you need to use. The final point I want to say about the final office actions from the reexaminations is that these were admitted without objection and there's no evidence that was used to rebut this or contradict it or dispute it during the trial. And it wasn't even argued. The focus of the trial was always about this dynamic breaking issue and showing that in prior commercial embodiments. So it's your position that the court erred by saying that she should not have had to rifle through those 100-page rejections to figure out what your prior art you were relying on was? Is that your position? Yes. That's a mistake. It's laid out page after page, clear prose, this column, this line of the prior art references where each limitation is found. And that applies to every asserted claim that we've been found to infringe. The other aspect I want to focus on briefly of the district court's findings is secondary considerations. The fundamental problem with these findings that were adopted is there's no nexus to the invention. There's no showing in the trial record that the commercial success and industry praise were driven by this claimed invention alone. Why does it have to be this feature of claimed invention alone? What if there's something that has praise for the video screen but also has praise for the ability of the device to change up pitches and pitch quickly? That would be good evidence, Your Honor. If there was evidence of praise relating to changing the pitches quickly, that relates to this claimed invention. All of the praise evidence in this case relates to the video system. They talk about simulating a real pitcher. They talk about looking them in the eye and having the timing of seeing a person pitch it in terms of when they swing. So if there is some praise that even a couple sentences in an article or something that refers to the changing up of the pitches and the speed of which doing that, you would say that that is praise that's worthy for secondary consideration, reliance by the court? That would be a very small amount of evidence and potentially the district court could rely on that to give it a small amount of weight. I would think they would weigh it according to the relationship to this other evidence. Everyone else was focused on the video scheme. There has to be a weighing that's done. That's what I'm trying to say. That's not going to end the argument. Yes, one person said it. That's not enough. I just wanted to make sure I understood your position on nexus, which is that it's not your position that the praise has to be directed to just one feature. If there is one feature of the claim that's praised, then you would agree there's some praise at least in an article. Maybe that's not clear enough. I just wanted to make sure I understood, and I think it's already clear on the record, that you're not saying just because something – there's praise for a video screen and then something that's claimed that the court can't rely on it. That's right, Your Honor. But the evidence in this case all focused on that video screen. I see that I'm in my rebuttal time, so. All right. We'll give you three minutes for rebuttal. Good morning. May it please the Court. Mr. Horvath. Good morning, Your Honor. May it please the Court. I know you're eager. I am eager. In this particular case, ProBatter Sports created, designed, and innovated and professionally revolutionary – What's missing here in the prior art other than dynamic braking? Multiple things. Dynamic braking is missing from Floyd, their primary reference – No, no, no, but that's not my question. Apart from dynamic braking, what's missing in the prior art? Yes. In addition to that, linear actuators coupled with a center pivot is a critical feature of the claims and is – It's not a feature of all the claims. Some of the claims are simply nothing more than a pitching machine together with dynamic braking, right? Not the way it was construed by the district court in an unchallenged way now. So the district court read in through means function numerous structures throughout all of them. But remember, Your Honor, there's 16 infringed claims. There's no challenge to claim construction. There's no challenge to the infringement findings. And if there's one infringed claim, if Your Honor would like to focus on one, for example, is a particular claim that includes a programmable pitching machine that's designed to throw multiple pitches within a short period of time. It includes dynamic braking. It includes linear actuators to adjust the machine in the horizontal and vertical directions. And it includes, importantly, a center pivot. And the notion, Your Honor, of a center – Let's take claim one, for example, the 924. Yes. This is just a pitching machine combined with dynamic braking, right? I believe that is true, Your Honor, for that particular claim. Yeah. Well, as to that particular claim, certainly pitching machines were in the prior art, right? Agreed. So the only feature is dynamic braking. For that particular claim, the inclusion – And so if dynamic braking is obvious to combine with a pitching machine, that particular claim is invalid, right? It would be under that hypothetical, but remember, Your Honor, dynamic braking was not found to be within the scope of analogous prior art by the district court. Okay, but address what he's arguing. He says, okay, I'll accept these findings by the district judge that the witnesses who specifically testified to the use of dynamic braking in these pitching machines in the prior art can be sustained. But I'm saying that the prior art showed pitches delivered after a short interval. There's this manual for the motors which says use dynamic braking if you want to change quickly, and that makes it obvious to combine the two. You need more, of course. You need a motivation to combine those two pieces of prior art in the way in which it was claimed. Well, why isn't there a motivation in the manual which says if you want to do this, use dynamic braking? No, no, no. Respectfully, it does not say that. So in order to get to the claimed invention from those two pieces of prior art for one of the claims in the 924 patent, you would need to know, as one of ordinary skill in the art, that it was important or beneficial or advantageous to rapidly decelerate. Where do we find the manual, the language from the manual? Well, I don't know specifically right off the bat, Your Honor, but we could look. I don't see it quickly, Your Honor, but it doesn't, it does not do what. Well, I mean, you say you tell us what it says, but you can't show us what it actually says. That's not that helpful. Well, in large part, Your Honor, this was not argued below. It wasn't pointed to the district court below. It's done for the first time here. Page A-1671. Thank you. So it talks about, Your Honor, if you need 1671, it talks about if you want to ramp the motor down slowly or decelerate it, you could use regenerative or dynamic braking. And my point about motivation to combine, Your Honor, which is a critical and important one in the obviousness equation is that— Where is the language on this page? Sure, it's right at the very top, Your Honor, the very first paragraph on the left. Regenerative braking or dynamic braking may be more rapid than allowed by the application. What is inhibit? Inhibit. In those situations, inhibit is enough. What is inhibit? There was no testimony about what that means, Your Honor. Nobody? Well, I mean, I think what they're relying on is— Matar always recommends regenerative drives when fast braking and reversing is required. That's what they're relying on, right? Slowing down the motor in a rapid way, dynamic braking was known. There's no question about that. But did the prior art necessarily involve braking? No, absolutely not. No? No. So changing pitches quickly did not require braking of the wheels. You could adjust pitches without rapid deceleration of wheel speed. These inventors discovered that there are times when you're throwing a fastball like Roger Clemens at 95 miles per hour and the bottom wheel is going at, for example, 2,500 RPMs, you might want to change it up to a slow-pitch sinker like Tommy John, and that would require very rapid deceleration of that bottom wheel to 1,500— 2,000 RPMs in a very short period of time. Nobody appreciated the benefits of doing that other than these inventors. They looked— I thought the prior art—some of the prior art patents did talk about changing speeds quickly. That's true, right? Changing pitches within a short period of time, yes. Changing dramatically pitches like I just described, absolutely not. So professional baseball pitchers do what I just described. Nobody appreciated that rapid deceleration of wheel speed could accomplish that, would accomplish that. These inventors did accomplish that, and they employed dynamic braking to do so. Further, Your Honor, nobody appreciated that using linear actuators and a center pivot would allow very small but accurate adjustments of the powerhead so that the batter would not appreciate the subtle movements of that machine and therefore could not predict what pitch was coming. And that's something that's found, you're saying, depending on Claim 8? Yes, Your Honor, for example, as an example, yes. But Claim 1 was also invalid, right? It was what? Claim 1 was also found to be not invalid. Absolutely, yes, because there is no evidence of a motivation to combine. All of the evidence that came forth on this particular point about motivation to combine came from discredited, interested, uncorroborated testimony. The judge weighed and looked each witness in the eye, determined their credibility, determined there was none. For example, a sports tutor brought into the courtroom a machine, an actual pitching machine, that they proclaimed under oath was assembled and was in the public domain in 1996, i.e. was prior art. Under cross-examination, it was determined that the machine actually had motors which were manufactured in the year 2000, Your Honor. We looked under the machine, looked at the motors, and there's a concession that the machine that allegedly showed a motivation to combine and invalidated these claims was wholly wrong, wholly made up. Further, there was a witness, Coach Gallagher, who said he saw, for example, a pitching machine that had this feature of dynamic braking, although he doesn't know what dynamic… Your adversary has pretty much walked away from those witnesses today. Right. And so, Your Honor, if he does that, there's absolutely no evidence of a motivation to combine dynamic braking into a programmable pitching machine, nor is there any motivation or acknowledgment of the benefits of… The argument based on the manual is fresh today. It is, and it's solely recreation to invalidate the claim. They relied on the manual below, right? They put it into evidence without a proposed finding of fact or without connecting it from a motivational to combine perspective. The judge found explicitly no motivation to combine. You would have to find that that was clear error, that there was no way in the world could she reject any evidence along those lines. And respectfully, you cannot do that on this record by acknowledging that the machines and the way she analyzed the Woodland Trust factors cannot be reviewed successfully here. It's impossible for you to reverse those findings. Was there clarity of the trial below as to whether or not this case had been tried as an anticipation case as opposed to an obviousness case? Your Honor, before trial, there was a defense of anticipation. There was no trial evidence about anticipation. When they brought forth the testimony about the machines and people were testifying that everything could be found in the machine, that's an anticipation. I believe you're acknowledging one of the points that the Judiciary Court made, which was it sounds like you're arguing anticipation, but you never briefed anticipation, nor did you provide any proposed findings of fact with respect to anything. And so I believe they've waived or abandoned their anticipation defense, which was an affirmative defense. So it's clear that the claimed invention is innovative and novel, and they have to piece together in a recreative way. But I think the problem is this, that in reading the district court's opinion, it seems to be that she says, well, I don't believe that dynamic breaking has been shown to have been used in the prior art, therefore it's not obvious, which sounds like an anticipation decision rather than an obviousness decision. No, I disagree with that, Your Honor. She said she found it was not used in the art, nor in the field of indebtedness, and therefore it was an analogous art. She didn't say that it was never used. I would have stood up and said, of course it was used. Nobody contemplated using it here. She specifically made a finding that it was common. The dynamic breaking was common. Outside of the context of the matter. Yes, of course. Outside the context of this field of endeavor, nobody appreciated rapid deceleration of wheel speed had tremendous benefits. And that's why nobody did it beforehand. It's innovative. Further, they copied it immediately. Can I ask you about secondary considerations? Yes. Okay, so what we heard earlier was that there is absolutely no praise at all for switching up pitches or for changing the speed of pitches quickly and rapidly. Do you agree with that? No, absolutely not. So there's a number of references throughout that the appreciation is both. First of all, that it's the video component coupled with the ability to dramatically change pitches, which gives you that real-life professional experience. Further, Is there particular sites in the record that you would rely on? Yes. They're in my brief, which I left in the pews. But yes, there are. And they explicitly focus on the feature of changing up the speeds and being able to simulate a professional ball player. And they come from professional ball players, people who know. Also, there's an acknowledgment from the CEO of Sports Tutor that he thought the machine when he saw it for the first time at a trade show was pretty cool. He's from California. He thought it was pretty cool, and he was impressed. But that's not directing it to the speed of the changing pitches. That's just the machine. With all due respect to you. No, you're not supposed to interrupt. I apologize. That could well have been directed to the video aspect of it, the reality with the pitcher and so on and so forth. He didn't so limit it that way? The district court judge didn't so limit it that way? She determined that it was an acknowledgment that the entire system, which includes the ability to dramatically change pitches, was impressive. And they copied it the month thereafter. And they've been capitalizing on it ever since. Immediately from their baseball sales, they had a number of machines, never anything like this. Ninety percent of their sales immediately became the infringing copied device. They praised it. They praised it with their copying. And the industry praised it throughout. And it's important, I believe, that the copying. Where's your best example of the industry praising the change in pitching speed as opposed to other aspects of it? If I can go back to appeals, I'll be right back. You can do that. But you're supposed to bring your briefs up to the podium.  I didn't anticipate that you would ask that specifically. It happens. Okay. I'll be right back. Sorry. So you're in the background of our brief. We talk about the secondary factors. And on page 12, one former professional baseball player proclaimed, it's an incredible piece of equipment. It will throw 40 to 100 miles an hour, and it will throw any pitch that you can possibly ask for. I mean, it is absolutely amazing. And it goes on. Even sports studio CEO was impressed and praised the machine. It's pretty cool. And the secondary factors, let me just say, it doesn't have to be solely the entire commercial system. If the claim to invention contributes to the success, if it contributes to the praise, it gets credited just like the district court did here. She did not clearly err in any of her findings. She did not clearly err in finding no motivation to combine. She did not clearly err in finding an inability of the defendant to outline their defense for her. Okay. Thank you, Mr. Horvath. We're out of time. Thank you. Mr. Hart, you've got three minutes. Thank you, Your Honor. Three minutes. If you are staying on page 12 there, the quote he just read, there's nothing in there about changing the interval of time between the pitches. If you're just talking about a machine that can pitch pitches of different speeds, that's described in the prior patents. That's described in Floyd. That's described in Sanders. I'd like to make a few more points. He discussed some of the credibility determinations and talking about copying and some of those things. In the machine that was at trial, those motors were replaced in 2000 apparently based on the dates. But even if you give it the 2000 date, that's still years prior to sports tutor allegedly seeing it at the trade show, and that's when they decided to use dynamic braking. Sports tutor knew about dynamic braking from the tennis business way before the baseball trade show where they saw this, and they'd also purchased the Scott patent and some related business relating to these machines. Where is the prior talk about rapidly changing speeds? So, for example, in the Sanders patent, this is at A1664. This is column 12, lines 33 to the end of the paragraph. The delivery cycle, for example, one pitch every 10 seconds, is designed to be constant, so the batter does not have a clue of any pitch sequence by result of the variation in time to adjust for each different pitch. Likewise, the motor systems are quiet so that he does not hear any audible adjustment going on to give him a clue that the next pitch will be different from the last one delivered. That's one example. It's still the same kind of pitch though, right? It's the same pitch over and over again every 10 seconds. It doesn't say that you're changing every 10 seconds, does it? No, it says you're adjusting for different pitches. And that's in line 36. And if you go back to the Floyd patent, this is appendix 1614. It says, change any one or more of the variables between each and every pitch rapidly in a period of time of a few seconds. So those are clearly the time interval aspect is in those prior patents, and that is what provides the motivation to use a dynamic braking element in the completed system. I'd like to briefly touch on something else that was said, and that's claim eight and what was missing in linear actuators. And you particularly pointed these references out to the district court, Joe? Yes, these are in the record. Where in the record can you show that you, during the bench trial, pointed those references out? During the course of the trial, live testimony, that did not happen. But in the briefing, we said, look at this office section. It lines up every element of the claims other than dynamic braking. And all the evidence presented at trial is about dynamic braking. All right, but this is you're now talking about dynamic braking. All I'm trying to get at is I didn't see anything that referenced to me that the judge had this argued to her. Your Honor, I'm out of time, but I'd like to answer your question. Our theory of this case has been that you should start from where the patent office left off. They found all these elements other than the dynamic braking in these prior patents, and the trial presentation was about dynamic braking. I understand that. But I think the question is where did you argue this theory that you have been espousing this morning about the Floyd and the Baxter patents talking about short intervals and the motor manufacturer manual talking about using dynamic braking when you want to change speeds quickly? Where did you argue that to her? We argued that there's no known practical alternative to do it other than dynamic braking. I mean, that testimony was elicited at trial. They're relying on it. We're just talking about the actual specifics of the argument. I didn't see any evidence of that. As Judge Blake said, that was presented. It may not be phrased exactly in those terms. So I see I'm out of time. Thank you, Your Honor. Thank you. Thank the counsel. The case is submitted, and we'll recess briefly.